IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WELLS FARGO BANK, N.A.,

   Plaintiff,

     v.

LINCOLN BENEFIT LIFE
COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-2890-TWT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This is an insurance claims dispute. Pursuant to the mandate of the Court of Appeals, the Court conducted a bench trial on February 13, 2017. Based upon the evidence presented, the Court hereby enters the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1.

On December 31, 1999, Defendant Lincoln Benefit Life Company issued a "Flexible Premium Adjustable Life Insurance Policy," Policy No. 01N1029191 (the "Policy") to Najah Almalat. (Ex. J-4) The Plaintiff Wells Fargo Bank, N.A. is

pursuing this civil action in its capacity as the Sub-Custodian and Securities Intermediary of current beneficiary of the Policy.

2.

As there is no dispute regarding standing, for the sake of convenience, the Court shall hereinafter refer to Wells Fargo Bank, N.A., the parties for whom it acts and their respective predecessors in interest collectively as the "Plaintiff." The Plaintiff is the beneficiary of the Policy and has been at all times relevant to this case.

3.

On the initial application for the Policy, Ms. Almalat stated that she was born in 1939. (Ex. J-3) Lincoln Benefit nevertheless issued the Policy with a birth date in 1936. Specifically, the Policy states that Ms. Almalat was 63 years of age on the date the Policy was issued on December 31, 1999. (Ex. J-4) An amendment to the Policy, dated February 2, 2000, lists Ms. Almalat's date of birth as August 30, 1936. (Ex. J-5)

4.

In 2007, Lincoln Benefit was presented with a copy of Ms. Almalat's Senior Citizen Identification Card issued by the State of California. That document listed Ms. Almalat's date of birth as June 11, 1936. (Ex. J-6) Lincoln Benefit accepted the California ID Card as acceptable proof of age and amended the Policy to reflect Ms. Almalat's date of birth as June 11, 1936. (Ex. J-7) The 2007 amendment did not affect

the premiums or benefits under the Policy because Ms. Almalat would still have been 63 years of age on the date the Policy was originally issued – December 31, 1999.

5.

Ms. Almalat died in Syria on February 17, 2010.

6.

On July 23, 2010, and August 25, 2010, Lincoln Benefit sent letters to the Plaintiff regarding the Policy. Those letters included the certain pre-printed Lincoln Benefit forms that Lincoln Benefit required the Plaintiff to complete and submit in order to receive the proceeds of the Policy. (Ex. J-8, J-11)

7.

By letter dated September 17, 2010, the Plaintiff submitted completed Claim Forms to Lincoln Benefit in support of its request for the Policy's death benefits.  The Claim Submission included, among other things, a Claimant's Statement of Life Insurance Proceeds, a Foreign Death Questionnaire, a certified Death Statement issued by the Syrian Arab Republic, Ministry of Interior, Civil Affairs, with an English translation. The English translation of the Syrian Death Statement lists Ms. Almalat's date of birth as "01.12.1931." (Ex. J-9)

8.

Both the Claimant's Statement and the Questionnaire included pre-printed sections requesting identifying information for the insured, including the insured's date of birth. The Plaintiff's representative inserted the "01.12.1931" date of birth recited on the Syrian Death Statement when filling out these documents. (Ex. J-9)

9.

Lincoln Benefit received the Claim Submission on September 20, 2010. (Ex. J-9) Lincoln Benefit immediately realized that the "01.12.1931" date of birth reflected on the Syrian Death Statement, the Claimant's Statement and the Questionnaire did not match the 1936 date of birth on the Policy. Specifically, a September 21, 2010 notation in the Lincoln Benefit claims file notes this discrepancy. (Ex. J-12)

10.

Lincoln Benefit did not bring the date of birth discrepancy to the attention of the Plaintiff. Instead, Lincoln Benefit informed the Plaintiff that, because Ms. Almalat died in a foreign country, Lincoln Benefit would undertake a routine investigation to confirm Ms. Almalat's death. (Ex. J-11) Lincoln Benefit hired an investigative firm, ICS-Merrill, to conduct an investigation regarding Ms. Almalat. (Ex. J-14) The final report that ICS-Merrill issued to Lincoln Benefit listed Ms. Almalat's date of birth as August 30, 1936. (Ex. J-26)

11.

In the course of its investigation, Lincoln Benefit obtained a purported Syrian Birth Certificate from AXA Equitable, another insurance company that issued a life insurance policy to Ms. Almalat. The Syrian Birth Certificate reflected a 1931 birth date, but the email forwarding the Syrian Birth Certificate stated: "This record reflects a date of birth as 1/1[2]/1931 while the electronic record at the Civil Registry the year of birth is 1936." Moreover, the Syrian Birth Certificate was not created until 1959. (Ex. P-1)

12.

On March 30, 2011, Lincoln Benefit sent the Plaintiff a letter regarding the Policy. That letter acknowledged that the face amount owed under the Policy was $2,953,735.00. Nevertheless, Lincoln Benefit informed the Plaintiff that it was excluding $1,084,807.27 in benefits under the Policy (the "Excluded Proceeds"). To justify its withholding of the Excluded Proceeds, Lincoln Benefit relied on a Misstatement of Age provision in the Policy and took the position that Ms. Almalat was born in 1931. (Ex. J-30) Thus, according to Lincoln Benefit, Ms. Almalat was 68 years old when the Policy was issued – not 63 years old as stated on the Policy. As proof of the alleged misstatement of age, Lincoln Benefit relied on the Syrian Death Statement and the Syrian Birth Certificate. (Ex. J-30)

13.

The Plaintiff obtained certified records of the California Department of Motor Vehicles that list Ms. Almalat's date of birth as June 11, 1936. (Ex. P-3) The certified records of the United States Social Security Administration also reflect that Ms. Almalat was born in 1936; although on a different day and month – September 26, 1936 based upon presentation of a Syrian passport. (Ex. J-36)

14.

On July 19, 2013, the Plaintiff filed its Complaint in the Superior Court of Fulton County, Georgia, asserting claims for breach of contract and bad faith arising from Lincoln Benefit's refusal to pay the Excluded Proceeds. On August 29, 2013, Lincoln Benefit removed the case to this Court in the Northern District of Georgia. This Court subsequently dismissed the Plaintiff's bad faith claim.

**CONCLUSIONS OF LAW**

Based on a choice of law provision in the Policy, the Plaintiff's sole count of breach of contract is governed by California law. Under California law, a beneficiary of a life insurance policy "seeking to recover on an insurance policy must aver the loss and show that it occurred by reason of a peril insured against." Searle v. Allstate Life Ins. Co., 696 P.2d 1308, 1316 (Cal. 1985); see also Honnevk v. Farmers New World Life Ins. Co., 2013 WL 3733610, at *4 (E.D. Cal. July 15, 2013) (life insurance policy

placed the burden on the beneficiary to show evidence of insured's death). In this case, there is no dispute that Ms. Almalat died and that, but for the issue regarding her date of birth, the Plaintiff would be entitled to the Excluded Proceeds. Thus, the primary issue presented is whether Ms. Almalat's date of birth was misstated on the Policy; more specifically, whether Ms. Almalat was actually 63 years old when the Policy was issued on December 31, 1999, or whether she was 68.

In general, the burden of proving an exclusion to the Policy "which negates full liability is on the insurer and not on the beneficiary." Searle, 696 P.2d at 1316 (insurer had the burden of proving suicide to avoid liability on a life insurance policy); see also Trull v. Independent Order of Puritans, 181 P. 89, 90 (Cal. Ct. App. 1919) (insurer failed to satisfy its burden to prove the insured misrepresented his health in the application). Although no California court appears to have addressed the burden of proof specifically in the context of misstatement of age, the courts that have addressed the issue require an insurer prove a misstatement of age by the insured as a defense to paying the full death benefit. See, e.g., Plan Investments, Inc. v. Brumfield, 319 So. 2d 859, 862–63 (La. Ct. App. 1975) (insurer had burden of proof to show insured was more than sixty-five years of age when life insurance policy was issued); Koch v. Prudential Ins. Co. of Am., 447 P.2d 825, 828 (Kan. 1968) ("We must conclude that the contention that one is not in an assured group because of age presents an

affirmative defense and the burden of proof is upon the insurer."); American Nat. Ins. Co. v. Branch, 191 S.E. 668, 672 (Va. 1937) ("The statement of the assured as to his age, in the application for a [life] insurance policy, is presumed to be correct, and the burden of overcoming this presumption is on the insurer."); Bernard v. Metropolitan Life Ins. Co., 45 N.E. 2d 518, 519 (Ill. App. Ct. 1942) (insurer had burden to prove affirmative defense that insured misstated his age and that insurer could reduce death benefit based on similar provision as the Misstatement of Age Provision); Aronson v. Hercules Life Ins. Co., 131 S.W. 2d 852, 854, 857 (Mo. App. 1939) (same); Hardy v. State Mut. Benefit Soc'y, 170 A. 704, 705 (Pa. Super. Ct. 1934) (same); 6 Couch on Ins. § 86:7 (2013) ("The burden of proving a misstatement of age by the insured rests upon the insurer, and in the absence of proof to the contrary, a presumption exists that the applicant has truly stated his or her age.").

The Court has weighed the evidence regarding Ms. Almalat's date of birth and concludes that she was born in 1936. This conclusion is based on a number of facts. First, Lincoln Benefit was aware that there was a question regarding Ms. Almalat's date of birth when it originally issued the Policy. Specifically, on the Policy application, Ms. Almalat listed her date of birth as August 30, 1939. Notwithstanding this, Lincoln Benefit underwrote and issued the Policy based on Ms. Almalat being 63 years of age on December 31, 1999 – thus, making her year of birth 1936.

Presumably, this was based upon satisfactory evidence that this was her true age. This underwriting conclusion is further evidenced in the February 2000 Amendment to the Policy which lists Ms. Almalat's date of birth as August 30, 1936. Second, in 2007, Lincoln Benefit was presented with a copy of Ms. Almalat's California ID Card, which listed her date of birth as June 11, 1936. Lincoln Benefit accepted the California ID Card as acceptable proof of Ms. Almalat's date of birth and amended the Policy accordingly. Third, the California DMV Records confirm the date of birth on the California ID Card. 20 C.F.R. § 422.107(c) (explaining driver's license constitutes "convincing evidence of your identity" because it contains "sufficient information to identify you, including your name and: (i) [y]our age, date of birth, or parents' names; or (ii) [y]our photograph or physical description."); Collier v. Apfel, 91 F. Supp. 2d 904, 905 (W.D. Va. 2000) (considering driver's license evidence to determine date of birth).

Finally, the Social Security records also reflect a date of birth in 1936. When applying for Social Security benefits, an applicant is required to submit "convincing" evidence of her date of birth. 20 C.F.R. § 404.715; 20 C.F.R. § 404.708; see also 20 C.F.R. § 422.107(a) ("To obtain an original Social Security number card, you must submit convincing evidence of your age, U.S. citizenship or alien status, and true identity. . . We will not assign a Social Security number or issue an original or

replacement card unless we determine that you meet all of the evidence requirements."); Jennings-El v. Social Sec. Admin., 2007 WL 1114237, at *2 (S.D. Ohio Apr. 12, 2007) ("The requirement that plaintiff obtain proper verification of his identity before a Social Security card may be issued . . . reflects legitimate governmental policies of reducing identity theft and ensuring fiscal responsibility."). Thus, the Social Security records are reliable proof of age.

The Court concludes that the Syrian Death Statement is not persuasive evidence of Ms. Almalat's date of birth because it was provided to document her death, not to confirm her date of birth. See Interstate Life & Accident Ins. Co. v. Smith, 260 So. 2d 453, 456 (Miss. 1972) (death certificate could not be used to establish the date of birth of the deceased insured because "to put the date of one's birth on a death certificate is obviously hearsay evidence"); In re Fink's Estate, 21 A.2d 883, 888 (Pa. 1941) (death certificate is admissible to prove the fact of death but not to prove the birth date). The Syrian Birth Certificate was not recorded until 1959 – more than 27 years after Ms. Almalat was allegedly born. See Kappler v. Shalala, 840 F. Supp. 582, 586 (N.D. Ill. 1994) ("Because the delayed birth certificate was recorded either 11 or 12 years (depending on what birth date is chosen) after that Regulation-specified watershed, it clearly cannot be accorded the status of 'preferred evidence.'"). Moreover, the party that provided the Syrian Birth Certificate to Lincoln Benefit

questioned its accuracy. Specifically, Lincoln Benefit obtained the Syrian Birth Certificate from AXA Equitable, another insurance company that issued another life insurance policy to Ms. Almalat. The email forwarding the Syrian Birth Certificate to AXA Equitable, which was subsequently forwarded to Lincoln Benefit, stated: "This record reflects a date of birth as 1/1[2]/1931 while the electronic record at the Civil Registry the year of birth is 1936." The foregoing evidence casts doubt on the reliability of both the Syrian Death Statement and the Syrian Birth Certificate. In light of the foregoing, regardless of which party bears the burden of proof on the issue of Ms. Almalat's age, the Court finds that she was born in 1936. Accordingly, the Court finds that Lincoln Benefit breached the Policy by refusing to pay the Excluded Proceeds.

Lincoln Benefit argues the Plaintiff is estopped from denying the 1931 date of birth because it attested to that date of birth on the Claimant's Statement and the Questionnaire.  Under California law, equitable estoppel requires that: (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted upon, or must so act that the party asserting estoppel had a right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of the facts; and (4) the party asserting estoppel must reasonably rely on the conduct to his or her injury. <u>Lukovsky v. City and County of San Francisco</u>, 535 F.3d

1044, 1051-52 (9th Cir. 2008). The burden is on the party asserting estoppel to establish each of the foregoing elements. Wolitarsky v. Blue Cross of California, 61 Cal. Rptr. 2d 629, 632 (Cal. Ct. App. 1997).

The Court finds that Lincoln Benefit's estoppel defense fails for three independent reasons. First, the Court concludes that the evidence fails to support a finding that Lincoln Benefit reasonably relied on the date of birth information recited in the Claimant's Statement or the Questionnaire. "The sine qua non of estoppel is that the party claiming it relied to its detriment on the conduct of the party to be estopped." Gorlach v. Sports Club Co., 148 Cal. Rptr. 3d 71, 78 (Cal. Ct. App. 2012) (emphasis in original). In Warner Bros. Int'l Television Distr. v. Golden Channels & Co., 522 F.3d 1060, 1069 (9th Cir. 2008), the court reversed a ruling of equitable estoppel because there was no evidence that the party claiming estoppel had reasonably relied.

After receiving the Plaintiff's claim, Lincoln Benefit conducted its own independent investigation regarding Ms. Almalat's death. The results of that investigation uncovered contradictory evidence regarding whether Ms. Almalat was born in 1931 or 1936. The evidence, therefore, shows that Lincoln Benefit did not reasonably rely on the date of birth information listed in the Claim Submission. Moreover, in the letter informing the Plaintiff that it was withholding the Excluded

Proceeds, Lincoln Benefit did not profess to have relied on the Claimant's Statement or the Questionnaire. And, Lincoln Benefit did not present any testimony at the trial that it had relied – reasonably or otherwise – upon the date of birth listed in the Claim Submission. Lincoln Benefits' sole trial witness had no personal knowledge about the processing of the claim.

Second, the Court finds that Lincoln Benefit cannot prove it was ignorant of the true facts regarding Ms. Almalat's date of birth. See Smith v. Governing Bd. of Elk Grove Unified Sch. Dist., 16 Cal. Rptr. 3d 1, 5 (Cal. Ct. App. 2004) (holding that "a party invoking estoppel must have been misled by the other party."). Upon receiving the Plaintiff's Claim Submission, Lincoln Benefit immediately realized that there was a discrepancy between the 1931 date of birth on the Syrian Death Statement and the 1936 date of birth on the Policy.

Third, the Court concludes that Lincoln Benefit has failed to present evidence that the Plaintiff intended for Lincoln Benefit to rely on the date of birth information contained in the Claimant's Statement and the Questionnaire. See Hendren v. Yonash, 52 Cal. Rptr. 738, 744 (Cal. Ct. App. 1966) ("The party [against whom estoppel is asserted] must intend that his conduct shall be acted upon."). The Plaintiff's witnesses testified that they believed that information was provided solely for identification

purposes; not as a confirmation that the date of birth in the Policy as issued was accurate.

The Court concludes that, under California law, the Plaintiff is entitled to prejudgment interest at the rate of 10% per annum from the date of the breach. See Cal. Civ. Code § 3289. The Court finds that prejudgment interest began to accrue on March 30, 2011, when Lincoln Benefit first refused to pay the Excluded Proceeds. The Plaintiff is not entitled to an award of attorney's fees under O.C.G.A. § 13-6-11 because there was a genuine dispute of material fact as to Ms. Almalat's date of birth. Failure to disclose the AXA email during pre-litigation negotiations is not bad faith nor stubborn litigiousness.

## CONCLUSION

Thus, the Court finds that Lincoln Benefit is liable to the Plaintiff for breach of contract in the principal amount of $1,084,807.27 plus prejudgment interest from March 30, 2011 through the date of this Order.

SO ORDERED, this 28 day of February, 2017.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge